John E. Cone, J.
This case was tried before the court without a jury. Findings of fact and conclusions of law were waived by the parties.
Plaintiff pleads two causes of action for' breach of contract. Both cases are identical except for dates and amounts. Reference herein shall be made as if there is but one cause of action since no useful purpose would be served in repeating the statements as to each cause.
On or about November 30, 1956 and December 10, 1956, the defendant ordered tin-plate waste from the plaintiff, to be shipped to defendant’s customer in Italy. The defendant reserved the right to inspect the material at the warehouse of the plaintiff as well as at the pier where material was to be delivered prior to shipment to Italy. The defendant accepted the goods as it was invoiced at the pier but did not make any inspection thereof at either of the designated places. When the material finally arrived at its ultimate destination, defendant’s customer rejected it, asserting that the material was substantially different from the specifications ordered. The defendant advised plaintiff of the rejection. Plaintiff took issue with respect to the faultiness of the shipment, but after some conversation and exchange of correspondence plaintiff authorized the defendant to communicate with its customer with a view towards settling the matter. Defendant was further advised by plaintiff that if the material could be sold by the defendant at a slight difference in price the plaintiff would hold the defendant harmless for the difference in value. On or about July 30,1957, defendant advised plaintiff that the customer was unable to use the material and wanted to be reimbursed in full. Plaintiff and defendant then orally agreed that a credit be given to the defendant in the amount paid by defendant to plaintiff for the goods and in addition for the expenses paid by the defendant for freight, insurance agent’s commissions, inspection fees and import duties, plus 50% of the profits that the defendant would have gained; that the defendant in turn would hold the goods at its customer’s warehouse for the plaintiff for disposition pursuant to plaintiff’s instructions. The defendant sent the following letter after the above conversation: 1 ‘ our customer insists upon immediate settlement of the full value of these 20 skids and we were unable to delay reimbursement any longer. We are therefore mailing our check to our customer this day to cover. Our debit note is enclosed herewith and we ask that you kindly let us have your prompt remittance. The material is being retained in our buyer’s plant in Naples pending release *332 instructions which will be issued by us upon receipt of your instructions. We presume that * * * you wish to take out a special insurance policy for your account to cover loss against fire and/or theft while the material is in our customer’s warehouse. Please confirm to us your wish to have us proceed along these lines ”.
The debit note referred to in the letter is attached and sets forth how the sum claimed is arrived at. The concluding paragraph states: “ We are holding this material for your account and at your risk on the. premises of Messrs. A. Bevilacqua & C, Naples and await your further disposal instructions.”
On receipt of the letter and the debit note, plaintiff called the defendant and asked what was meant by “ at our risk.” The defendant said that there is always the risk of fire, water damage and pilferage and suggested that insurance be taken by the plaintiff to cover such risks. The plaintiff authorized defendant to secure such insurance for plaintiff’s account.
Thereafter the amount set forth in the debit note was deducted from subsequent bills due the plaintiff from the defendant. Plaintiff and defendant conferred on several occasions concerning the possible sale of the goods by the defendant for the plaintiff. Since no sale materialized and since it was thought that it would be more profitable to withhold the sale of the goods until about March, 1958, when prices in the foreign market would be better, the goods were permitted to continue to remain in the warehouse in Italy. While the goods were in the warehouse, the defendant’s customer instituted in February, 1958, a suit in Italy against the defendant and attached the goods. This suit is still pending. It is a claim for damages arising out of loss of profits for breach of defendant’s contract to sell the goods to defendant’s customer. When defendant notified plaintiff of the development, plaintiff wrote to defendant on February 12,1958: “ You informed us that one of your associates is planning an immediate trip to your Holland office and we would thank you to ask this gentleman to proceed to Naples in order to try to obtain-the release of our goods by means of an amicable settlement. We also understand that it will be necessary to employ the services of a lawyer in Naples. This letter authorizes you to take care of this matter on our behalf and for our account. We request, however, that your associate relate to you as quickly as possible the results of his negotiations setting forth Messrs. Bevilacqua’s proposal for a settlement,, for our approval.”
Attempts to secure the release of the goods have proven fruitless. In August, 1958, plaintiff demanded the return of the *333 goods or the money and thereupon commenced this action for breach of defendant’s agreement to return the goods.
It seems to me that the agreement made by the parties with respect to the goods in the warehouse is one of simple bailment.
In Mays v. New York, New Haven & Hartford R. R. Co. (197 Misc. 1062, 1064) a bailment is defined as “ a delivery of personal property for some particular purpose, or a mere deposit, upon a contract express or implied, and that after such purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions or kept until he reclaims it, as the case may be (6 C. J., Bailments, § 1). It is essential that there be either an actual or constructive delivery by the bailor as well as an actual or constructive acceptance by the bailee (Osborn v. Cline, 263 N. Y. 434, 437).”
Title having reverted to the plaintiff in accordance with the agreement of the parties, the goods in the warehouse were constructively delivered from plaintiff to defendant upon an express contract to deal with them pursuant to plaintiff’s directions. The bailment was one for the advantage of both parties. We must assume that the holding of the goods by the defendant in Italy was a material consideration for the giving of the credit to the defendant so that the bailment was for the mutual benefit of both parties.
In Fidelity & Guar. Ins. Corp. v. Ballon (280 App. Div. 373, 375-376), it is said that: “ ‘ It is obvious that a bailee, whatever the character may be, when its purpose has been fully satisfied and performed, is bound, upon request, to re-deliver the thing bailed to its lawful owner. This is necessarily implied, in all cases, from the nature of the contract of bailment. The authorities are uniform to the effect that such re-delivery may be excused in the base of a bailment, mutually beneficial to the parties, by proof that the deposit has been lost or destroyed without negligence, or want of such care on the part of a bailee as prudent men, under similar circumstances, commonly take of their own goods. * * * It necessarily follows, from the nature of the obligation and the refusal to return the property, that the burden of showing the circumstances of the loss rests upon the bailee, and, unless the evidence shows the exercise of due care by him according to the nature of the bailment, he will be held responsible for the breach of his contract to return the property bailed.’ ”
Defendant’s explanation of non-negligence on its part is solely that the goods were attached in Italy. This attachment, however, does not release the defendant of its obligation to *334 return the goods. In Corpus Juris (vol. 6, § 95), it is said:. “ it may be stated, as a general rule, that the bailee is excused from returning the subject matter of the bailment where the goods are taken from him by authority of law exercised through regular and valid proceedings. But a seizure under process, in order to exonerate the bailee, must be such as is set in motion directly against the bailor in a suit to which the latter is a party.” The attachment of the goods in Italy arises out of a suit directly against the defendant herein and the plaintiff is not made a party thereto. Accordingly, the attachment is not a sufficient excuse for failure >to deliver the property to the plaintiff.
Judgment is thus awarded in favor of plaintiff for the sum of $8,701.29 on the first cause of action and for the sum of $4,716.50 on the second cause of action, together with interest on the entire amount, from the time of the demand for the return of the goods. Since the evidence does not reveal a specific date in August, 1958, when the demand was made, it shall be set for the purpose of computing interest as August 31,1958. Although the evidence indicates that the damages suffered by plaintiff, are in excess of the amount claimed in the complaint, recovery is limited to the sums set forth therein. Judgment is also awarded to plaintiff dismissing defendant’s affirmative defenses and counterclaims. By entering into the new arrangement with the plaintiff, defendant waived any right or claim to damages against the plaintiff for the alleged breaches of the prior agreements (Blair & Co. v. Otto, 5 A D 2d 276). In any event defendant failed to show the amount of any damage suffered. The evidence is insufficient to show any agreement whereby plaintiff agreed to indemnify defendant against any claims made by defendant’s customer.